845 So.2d 773 (2002)
Ex parte EMPLOYERS MUTUAL CASUALTY COMPANY, Inc.
(In re Computer Equipment and Service Company, Inc., et al. v. Employers Mutual Casualty Company, Inc., et al.)
1011202.
Supreme Court of Alabama.
September 6, 2002.
*774 John D. Richardson of Richardson, Spear, Spear & Hamby, P.C., Mobile, for petitioner.
Bibb Allen and Richard E. Smith of Christian & Small, L.L.P., Birmingham, for respondents Computer Equipment and Service Company, Inc., and Todd Barwick.
Nat Bryan, Dennis E. Goldasich, Jr., and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for respondent Nadia, Inc.

On Application for Rehearing[*]
HOUSTON, Justice.
Employers Mutual Casualty Company, Inc. (hereinafter "EMC"), seeks a writ of mandamus directing the Jefferson Circuit Court to vacate its orders striking EMC's affirmative defense of, and preventing discovery regarding, fraud and collusion with respect to a consent judgment entered in a case involving the respondents, Computer Equipment and Service Company, Inc., and its employee Robert Todd Barwick (hereinafter referred to collectively as "CESCO"), and Nadia, Inc. We grant the petition in part and deny the petition in part.
This case finds its roots in an action, filed by Nadia, Inc., against CESCO (case no. CV-00-658) alleging damage to one of Nadia's computers by CESCO. CECSO referred the complaint to EMC, CESCO's liability insurer, but EMC, asserting that CESCO was not entitled to coverage, refused to provide a defense. CESCO eventually consented to a judgment against it and in favor of Nadia for $1,100,000.
Before the entry of the consent judgment in case no. CV-00-658, CESCO filed a separate action (case no. CV-00-2329) against EMC and Nadia,[1] alleging, among other things, that EMC's failure to provide a defense amounted to a breach of contract, negligence, and the tort of outrage. After the entry of the consent judgment, Nadia filed a cross-claim against EMC in case no. CV-00-2329. EMC filed a counterclaim against CESCO and a cross-claim against Nadia, seeking a declaratory judgment on the issue whether there was collusion to defraud involved in the consent judgment.[2] However, the trial court dismissed EMC's counterclaim and cross-claim.
EMC then essentially restated its claim of collusion to defraud by amending its answer to add the claim as an affirmative defense against both CESCO and Nadia. The trial court struck the defense on the same basis it dismissed EMC's counterclaim and cross-claim, namely, because EMC failed to intervene as a party and challenge or appeal the consent judgment in case no. CV-00-658:
"THE COURT: ... You know, a court receives a case based upon facts *775 and decisions that are made, have been made prior to the filing. And in this particular situation, I'm looking at the consent judgment signed the 26th day of July, 2001 by Judge Owen Horn, which is Civil Action Number CV-00-658 AEH.
"I have reviewed all of the authority which you all have cited and considered all of the arguments made today and I stand by my previous order of February 7 [denying EMC's counterclaim and cross-claim], wherein I stated that this Court finds that EMC decided to deny coverage and to deny to defend in the underlying action and has no standing to challenge the judgment which has been properly entered [in] the underlying action. There was no appeal taken from this consent judgment and there's been no 60(b) [Ala. R. Civ. P.] motion filed to attack this judgment.
"Now, certain decisions were made. The way I read the law, the way I read it on February 7 was EMC, for whatever reason, decided not to take part in the proceedings before Judge Horn and made the decision not to file any kind of motion or to appeal the judgment of Judge Horn. It is my considered opinion that I cannot go behind the judgment of Judge Horn, whether it's by consent or not.
"I've heard arguments in our last time together, `Well, what if this was some astronomical consent judgment, Your Honor?' And I just heard the sum of, `What if it were two billion dollars?'
"Well, it's not. And in fact, it's $1,100,000. And before a judgment can be consented to and finalized, it takes the signature of a circuit judge in order tofor that to become a valid judgment. And on July 26, 2001, as evidenced by the file and as evidenced by the consent judgment executed by Judge Horn, this became a judgment. And in fact, the last piece of paper in that file and the last entry by the clerk makes reference to the consent judgment and I find nothing else. I'm going to make the following rulings, based upon everything I have heard today and previously.
"Number one, I'm going to grant the Motion to Strike the last Amended Complaint, the 23rd affirmative defense."
Furthermore, in accordance with this ruling, the trial court granted CESCO's and Nadia's motions for protective orders, barring EMC from deposing CESCO's and Nadia's lawyers regarding the circumstances surrounding the consent judgment.
EMC argues that it is entitled to a writ of mandamus directing the trial court to allow EMC to maintain, and to seek discovery regarding, its asserted affirmative defense. Typically, a petitioner seeking the extraordinary remedy of a writ of mandamus must demonstrate: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995).
However, acknowledging the particularities of certain scenarios, we have sometimes stated the standard in a different way. For example, with regard to discovery, we examine whether the trial court abused its discretion:
"Because discovery involves a considerable amount of discretion on the part of the trial judge, the standard this Court will apply in reviewing his actions on a petition for a writ of mandamus is whether there has been a clear showing that the trial court abused its discretion. Thus, a writ of mandamus directing the trial judge to set aside his ruling on a discovery matter will issue only where it *776 is clear that the trial judge has abused his discretion."
Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991). Likewise, governed by the particular concerns of judicial economy raised by the scenario involved herea trial court's pretrial decision to strike a potentially determinative affirmative defensewe have previously issued the writ after holding that the trial court's decision was erroneous, focusing mainly on the inherent prejudice on the petitioner. Ex parte United States Gypsum Co., 533 So.2d 557 (Ala.1988). In Ex parte United States Gypsum, we issued a writ of mandamus based on a trial court's erroneous striking of a defendant's affirmative defenses, stating:
"Our holding [that the trial court erroneously stuck the affirmative defenses] necessarily implies that mandamus is a proper remedy in this case. The probability that the trial court's error would require U.S. Gypsum to go through a second trial following reversal on appeal following a trial outweighs any prejudice that the plaintiffs face by way of having to defend against the matters raised in the original pre-trial motions. Accordingly, U.S. Gypsum is not restricted to raising these issues on appeal."
533 So.2d at 561 n. 3 (citation omitted); see also Ex parte Neely Truck Line, Inc., 588 So.2d 484, 486 (Ala.Civ.App.1991) (applying an abuse-of-discretion standard to a petition for a writ mandamus challenging a trial court's refusal to allow a defendant to plead an affirmative defense).
In this case, we hold that the trial court clearly erred in striking EMC's affirmative defense alleging collusion to defraud in obtaining the consent judgment. To a great extent, CESCO's and Nadia's arguments essentially follow the reasoning of the trial court: EMC cannot "collaterally attack" the consent judgment because EMC did not take advantage of the opportunity to intervene and to challenge the judgment in case no. CV-00-658. Indeed, intervention would have been required to bring a challenge under the rule mentioned by the trial courtRule 60(b), Ala. R. Civ. P.because that rule applies only to parties or their legal representatives. Rule 60(b), Ala. R. Civ. P. (providing an avenue for "the court [to] relieve a party or a party's legal representative from a final judgment, order, or proceeding"). However, EMC argues that it was not required to intervene in case no. CV-00-658 in order to challenge the consent judgment and that such intervention (1) would violate Rule 18(c), Ala. R. Civ. P., which prohibits "a jury trial of a liability insurance coverage question jointly with the trial of a related damage claim against an insured," and (2) would be inconsistent with EMC's position that it owed no coverage to CESCO.
Furthermore, a case cited by CESCO, First National Bank of Decatur v. Pullen, 129 Ala. 638, 29 So. 685 (1901), appears to support EMC's position that intervention in case no. CV-00-658 was not required. In Pullen, this Court stated:
"Judgments and decrees of courts are binding only upon parties thereto and their privies (except, of course, judgments strictly in rem which conclude all interest in the subject-matter, the thing against which it is rendered). Strangers are not bound by them, and may attack them collaterally whenever they are interposed to affect their rights. But it does not follow that strangers may not in any case attack them by a direct proceeding seeking their annulment. To the contrary, it appears to be well established law that whenever the existence of a judgment or the uses of which it is capable and which are imminent injuriously affect the rights or remedies of a stranger to it, he may by original bill directly attack it for fraud and collusion *777 and, upon proof, have it set aside and held for naught ...."
129 Ala. at 642, 29 So. at 687 (emphasis added). EMC is no doubt a "stranger" to the consent judgment (i.e., EMC was not a party in the action that resulted in the judgment), and there is also no doubt that the existence of the judgment injuriously affects EMC's rights; the judgment serves as the basis for CESCO's and Nadia's claims against EMC. We can simply find no reason why EMC should not be able to attack the consent judgment by raising "fraud and collusion" as an affirmative defense in case no. CV-00-2329. Id.
Because EMC is entitled to assert its affirmative defense, we hold that the trial court erred in striking it. Therefore, we grant the petition in part and direct the trial court to vacate its order striking EMC's affirmative defense. However, the trial court's denial of discovery was based upon its refusal to allow EMC's affirmative defense; therefore, the scope of discovery in light of our ruling is a matter to be addressed by the trial court. Accordingly, we deny the petition to the extent EMC asks this Court to direct the trial court to allow particular discovery.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur in the Court's decision to deny the petition for the writ of mandamus regarding the trial court's protective order preventing discovery as to the fraud and collusion claims asserted by Employer Mutual Casualty Company, Inc. ("EMC"). However, I must respectfully dissent from the Court's issuance of the writ of mandamus directing the trial court to vacate its order striking EMC's affirmative defense of collusion to defraud. Regardless of whether striking the defense was error, EMC can challenge that decision on appeal. "It is well settled that the writ of mandamus is an extraordinary and drastic remedy and is available only where 1) the petitioner has a clear legal right to the relief sought; and 2) the petitioner has no other adequate legal remedy." Ex parte Alabama Dep't of Envtl. Mgmt., 627 So.2d 927, 930 (Ala.1993). EMC has an adequate legal remedy available by way of an appeal. Therefore, mandamus relief is not warranted in this case.
NOTES
[*] Note from the reporter of decisions: On April 29, 2002, the Supreme Court denied the petition for writ of mandamus, without opinion. On May 13, 2002, an application for rehearing was filed and on June 6, 2002, the Supreme Court granted that application.
[1] Another party, Briggs Insurance Agency, was also named as a defendant in case no. CV-00-2329.
[2] According to EMC, its claims of collusion to defraud are based upon evidence indicating (1) that Nadia had originally demanded only $250,000 to settle its claims in case no. CV-00-658, an amount substantially less than the amount eventually consented to ($1.1 million), and (2) that the former owner of CESCO, while he did not believe that CESCO was liable to Nadia and even though he had already sold CESCO, nonetheless consented to the $1.1 million judgment.