National Security Fire and Casualty Company ("National Security") appeals from a judgment based on a jury verdict for Tommy R. Coshatt and his wife, Terri D. Coshatt. The Coshatts sued National Security on claims of breach of contract and bad faith refusal to pay. At trial, the court granted the Coshatts' motion for a directed verdict as to the breach of contract claim, and submitted the case to the jury for determination of the amount of contract damages and a determination of the bad faith claim. The jury returned a verdict for the Coshatts and awarded $1,600 as damages for the breach of contract and $30,000 as punitive damages on the bad faith claim.
National Security appeals, raising two issues: (1) whether the trial court erred in direct a directed verdict for the Coshatts on the breach of contract claim and (2) whether the trial court erred in not granting its motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial on the Coshatts' bad faith claim. The Coshatts cross-appeal, arguing that the trial court erred in excluding evidence they proffered to show a pattern and practice of bad faith denials of coverage.
The Coshatts purchased a homeowner's insurance policy from National Security in February 1993. A snowstorm damaged the Coshatts' home on March 12, 1993, and they made a claim under their policy. The Coshatts contacted their National Security agent, Jack Barber, within two days of the storm. Barber advised the Coshatts to make any necessary repairs. Barber had repeated conversations with the Coshatts, both before and after the repairs were made. He testified at trial that he routinely authorized repairs in similar circumstances where the damage was plainly covered and not too expensive. When the Coshatts contacted Barber, he was a senior National Security agent who trained other agents regarding the kind of coverage afforded by the policy held by the Coshatts.
The Coshatts had the damage repaired on March 18 and 19, 1993. Barber visited the Coshatts' home shortly after the repairs were made and assured them that they had done the proper thing under the circumstances. Barber testified at trial that he had discussed the Coshatts' claim with his supervisors at National Security and had told them that the claim was due to be paid and that if it was not paid he would quit the company.
James Keat, an independent adjuster hired by National Security, adjusted the claim in May 1993, inspected the repairs, and recommended payment of the Coshatts' claim. National Security denied the Coshatts' claim on June 22, 1993, on the ground that the Coshatts did not allow National Security to investigate the cause and extent of the loss.
 I. The Directed Verdict on the Breach of Contract Claim "The standard of review applicable to a motion for directed verdict is the 'substantial *Page 393 
evidence rule.' See, § 12-21-12(a), Ala. Code 1975; Koch v. State Farm Fire Cas. Co., 565 So.2d 226, 228 (Ala. 1990). To withstand a motion for a directed verdict, a party must have presented 'substantial evidence' supporting each element of his cause of action or defense. Id. 'Substantial evidence' has been defined as 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12. Also, we note that in reviewing a ruling on a motion for a directed verdict, we must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable inferences from the evidence as the jury would have been free to draw. Williams v. Allstate Insurance Co., 591 So.2d 38 (Ala. 1991); Bailey v. Avera, 560 So.2d 1038 (Ala. 1990)."
Hosea O. Weaver Sons v. Towner, 663 So.2d 892, 894 (Ala. 1995).
 National Security argues that the trial court's directed verdict on the breach of contract claim is wrong because, it says, there are questions of fact (1) as to whether the Coshatts permitted National Security to view the damage before making repairs and (2) as to whether the Coshatts presented National Security with false statements about the repairs.
The gist of National Security's first argument is that the Coshatts did not give National Security proper notice so as to allow National Security to inspect the property before the damage was repaired. This argument fails to recognize the undisputed evidence establishing that Barber, the National Security agent, was notified of the damage at least four days before the Coshatts began repairs. Notice to the company's agent is notice to the company.
 "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other."
Ala. Code 1975, § 8-2-8.
The testimony of other National Security employees indicating that Barber did not communicate the notice to them does not create a question of fact as to whether the company received notice. By statute, National Security received notice when its agent received notice. § 8-2-8. Moreover, National Security presented no rebuttal to its agent's testimony that he was timely notified and that he had authorized the repairs. National Security argues only that its agent did not specifically authorize complete repairs. Although Barber testified that the policy contemplated immediate temporary repairs to prevent further damage, he also testified that all the repairs he saw were covered under the policy.
Finally, National Security did not present any evidence that the Coshatts ever impeded National Security's effort to examine the property. Both Barber and National Security's adjuster, Keat, were permitted complete access to the property. In summary, National Security failed to produce substantial evidence supporting its contention that the Coshatts denied National Security access to the property.
National Security's second argument, that the directed verdict against it on breach of contract was erroneous, is that National Security properly denied coverage because, it says, the Coshatts submitted a false claim. Under the policy, National Security has the right to refuse coverage in the event of fraud. National Security argues that the Coshatts submitted a false claim, based on evidence that the Coshatts presented an inaccurate repair bill. Taken most favorably to National Security, the evidence showed that the Coshatts had the damage repaired and submitted the repair bill directly to National Security. The repair bill was prepared from an estimate that reflected costs for touch-up painting that had not been completed at the time of submission.
The first problem with this argument is that it was developedafter the Coshatts filed this lawsuit, after National Security had *Page 394 
already denied coverage. The adjuster informed National Security of inconsistencies in the bill in his report of June 4, 1993, but National Security denied coverage only on the basis of lack of opportunity to inspect, on June 22, 1993. A forfeiture provision such as National Security seeks to rely on here is subject to waiver, both by the insurer's failure to assert it and by its agent's approval of the repairs after they were made. Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Industrial Machinery, Inc. v. Creative Displays, Inc.,344 So.2d 743 (Ala. 1977).
The second, and more basic, problem is that National Security's false-claim argument arises under the "fraud and misrepresentation" forfeiture provision of the policy. The language of such a provision must be construed against the drafter, here National Security. Akins v. Randolph County Bd.of Educ., 643 So.2d 995 (Ala.Civ.App. 1994); Gray v.Reynolds, 553 So.2d 79 (Ala. 1989).
No reasonable construction of the fraud forfeiture provision of the policy supports National Security's argument that it was entitled to deny coverage because of an unintentional inaccuracy in a repair bill. That is, the trial court and this Court must construe any ambiguity in the fraud forfeiture language in the policy in favor of coverage for the insured.Turner v. State Farm Fire Cas. Co., 614 So.2d 1029 (Ala. 1993); Guaranty National Ins. Co. v. Marshall County Bd. ofEduc., 540 So.2d 745 (Ala. 1989). The correct construction would allow National Security to deny coverage only in the event it shows that the Coshatts intentionally misrepresented a material fact in their claim.
At most, the evidence as to the "false claim" shows the submission of an inaccurate repair bill that was not prepared by the Coshatts. There was also testimony by the repairman that all such work was eventually performed. This evidence indicates a dispute as to the amount of damages on the breach of contract claim; that issue was presented to the jury.
There is no substantial evidence that the Coshatts intentionally misrepresented their claim. There is no substantial evidence that the Coshatts prevented National Security from inspecting the damage, and the undisputed evidence is that National Security's agent authorized repairs before making inspection. National Security's argument that disputed facts exist because of the wording of its contract are unsupported, especially under the rule that a contract is construed against its drafter. Akins, Turner, GuarantyNational, and Gray, supra. We conclude that the trial court did not err in directing a verdict for the Coshatts on the breach of contract claim.
 II. Submission of the Bad Faith Claim to the Jury
The elements of a bad faith refusal to pay claim were set out by our Supreme Court in National Sec. Fire Cas. Co. v. Bowen,417 So.2d 179 (Ala. 1982). The Court stated:
 "[T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment without any reasonable ground for dispute. Or, stated differently the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
Id. at 183. See also Chavers v. National Sec. Fire Cas. Co.,405 So.2d 1 (Ala. 1981).
Since recognizing the tort of bad faith, our Supreme Court has held that mere negligence or mistake is not enough to support a *Page 395 
claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure. See King v. NationalFoundation Life Ins. Co., 541 So.2d 502 (Ala. 1989); Pierce v.Combined Ins. Co. of America, 531 So.2d 654 (Ala. 1988). Further, "if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." National Savings LifeIns. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982).
This test is the "directed verdict on the contract claim standard," noted in Burkett v. Burkett, 542 So.2d 1215, 1218
(Ala. 1989). The standard provides:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law."
Dutton, 419 So.2d at 1362.
National Security's argument that the trial court erred in submitting the Coshatts' bad faith claim to the jury is based on its argument that the Coshatts were not entitled to a directed verdict on their breach of contract claim. Considering our conclusion that the trial court did not err in directing a verdict for the Coshatts on the breach of contract claim, this argument has no merit. Further, a number of facts support the inference that National Security had actual knowledge that it had no legitimate basis for denying the Coshatts' claim.
Given § 8-2-8, we must conclude that National Security knew, through Barber, of the claim within two days of the damage, and National Security authorized repairs before it undertook any inspection. When an independent adjusting firm inspected the property and repairs, it recommended that National Security pay the claim. National Security "lost" its telephone records concerning Barber's and the Coshatts' communications with its home office; it also "lost" the recording of the conversation between the adjuster and Mrs. Coshatt. National Security never raised any discrepancies in the claim with the Coshatts, the repairman, Barber, or the adjuster before it denied coverage. After the Coshatts asserted their bad faith claim, National Security came up with the "false claim" argument as a basis for its denial of coverage.
Under these circumstances, we conclude that the trial court properly submitted the Coshatts' bad faith claim to the jury and properly denied National Security's subsequent motions for a JNOV and a new trial in that regard.
 III. The Cross-Appeal on "Pattern and Practice" Evidence
On cross-appeal, the Coshatts argue that the trial court committed reversible error by refusing to admit their evidence of similar denials of coverage as "pattern and practice" evidence of bad faith. The general rule governing the admission of pattern and practice evidence was discussed in depth inDorcal, Inc. v. Xerox Corp., 398 So.2d 665 (Ala. 1981). The plaintiff in Dorcal was the lessee of a copier who sued the manufacturer on a number of legal theories, including fraud. The trial court refused the admission of the plaintiff's pattern and practice evidence concerning another lessee's problems with another copier. The Supreme Court affirmed that action, with the following discussion:
 "As a general rule, the doctrine of res inter alios acta operates to exclude evidence of acts and declarations of nonparties, or dealings of parties, with nonparties, on grounds of irrelevancy. Loftin's Rent-All Inc. v. Universal Petroleum, 344 So.2d 781 ([Ala. Civ. App.] 1977). This rule is based, in part, upon the presumption that such collateral facts are incapable of affording any reasonable presumption or inference as to the principal matters in dispute. Id. This general rule is subject, however, to the limitation that when one's motion or intent is at issue, his acts, statements and conduct on other occasions which have a bearing upon his motion or intention upon the occasion in question are competent evidence. See generally, 29 Am.Jur.2d 'Evidence' § 365 (1967). In fraud cases, where intent, knowledge and *Page 396 
scienter constitute essential elements of the offense, evidence of similar frauds and misrepresentations are commonly admissible. Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961); Johnson v. Day, 230 Ala. 165, 160 So. 340 (1935); 37 Am.Jur.2d 'Fraud and Deceit' § 456 (1968). In passing upon the admissibility of such collateral matters, great latitude must be extended so as to afford the admission of any relevant evidence bearing upon the ultimate issue of fraud. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312
(1975).
 "In the instant case, the trial court sustained Xerox's objection to Mr. Burris's testimony on grounds that the testimony was irrelevant and immaterial. Though we recognize the need to admit any probative evidence, however slight, bearing upon the issue of Xerox's fraud, questions of materiality, relevancy and remoteness rest largely within the discretion of the trial court. Costarides v. Miller, Ala., 374 So.2d 1335 (1979); Knabe v. State, 285 Ala. 321, 231 So.2d 887 (1970). Therefore, its ruling concerning relevancy must not be disturbed on appeal unless such discretion had been grossly abused."
398 So.2d at 670-71 (emphasis added). See also AssociatesFin. Servs. Co. v. Barbour, 592 So.2d 191 (Ala. 1991), andHealthAmerica v. Menton, 551 So.2d 235 (Ala. 1989).
The record indicates various times where the trial court refused to permit discussion of other claims made against National Security that did not involve the Coshatts' claim. Although there was some discussion of other claims in the context of how the company handled claims, the trial court did not allow evidence as to claims more than three years removed from the Coshatts' claim, nor did it allow much specific discussion of other claims. The Coshatts made no specific offer of proof to establish exactly what they sought to admit.
The case law discussing pattern and practice evidence addresses such evidence under fraud claims. Even if the element of intent in fraud can be equated to the element of intent in a bad faith claim, there was no abuse of discretion by the trial court in refusing to admit the evidence in this case. Further, the lack of any offer of proof by the Coshatts deprives this court of any means of evaluating the evidence in question. Burkett v. American Gen. Fin., Inc., 607 So.2d 138
(Ala. 1992). The judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES and MONROE, JJ., concur.
THIGPEN, J., concurs in the result only.
CRAWLEY, J., dissents.