Allen M. Overton and Cindy Waldrop petition for a writ of mandamus compelling Judge Tim Jolley of the Marshall Circuit Court to vacate his order of March 6, 2006, granting the Rule 60(b), Ala. R. Civ. P., motion of North River Insurance Company ("North River") and vacating default judgments entered in 2002 against North River's insured, Prince Family Housing, Inc. ("Prince"), and Prince's employee, Michelle Brown. Prince is in the business of selling manufactured homes. We grant the petition and issue the writ.
Overton and Waldrop also filed an appeal, case no. 1051505, out of an "abundance of caution" in the event this Court determined that the trial court's order setting aside the default judgments was an appealable order. An order granting a motion seeking relief from a judgment under Rule 60(b), Ala. R. Civ. P., is generally considered an interlocutory order because further proceedings are contemplated by the trial court; therefore, such an order is not appealable. R.E. Grills,Inc. v. Davison, 641 So.2d 225 (Ala. 1994); Ex parteShort, 434 So.2d 728 (Ala. 1983). It is only in some circumstances that an order granting relief under Rule 60(b) is treated as a final judgment for purposes of appeal. SeeSanders v. Blue Cross-Blue Shield of Alabama, Inc.,368 So.2d 8 (Ala. 1979). In Sanders, the plaintiff filed an action in the circuit court, alleging tort claims against Blue Cross-Blue Shield. Those claims were subsequently dismissed. The plaintiff then filed an action in the district court, alleging breach-of-contract claims against Blue Cross-Blue Shield. Blue Cross-Blue Shield pleaded the affirmative defense of res judicata. Before the district court ruled, the plaintiff returned to the circuit court and filed a Rule 60(b) motion seeking to set aside the dismissal. The circuit court granted the motion, noting that the plaintiff had not alleged breach of contract in his complaint in the circuit court. The circuit court's order was final because no further proceedings were contemplated in the circuit court and the plaintiff intended to proceed in the district court, the contract claim being within the jurisdictional limit of the district court. Therefore, this Court denied Blue Cross-Blue Shield's petition for a writ of mandamus, holding that the Rule 60(b) order granting relief was sufficient to support an appeal. In the present case, however, review by a petition for a writ of mandamus is appropriate. Therefore, we dismiss the appeal.
North River issued a commercial general-liability insurance policy to Prince effective for the year ending January 5, 2000. The insurance policy provided that North River would pay those sums the insured became legally obligated to pay as damages because of bodily injury or property damage covered by the insurance policy.
Blythe Insurance Agency obtained the policy for Prince through an insurance *Page 425 
broker, Acordia of Michigan; Denis Porter was the Blythe employee who sold the policy to Prince. Acordia represents insurance companies that offered a specialty line of insurance for mobile-home retail-sales dealers. Acordia would send Blythe a statement each month, and Blythe would collect the premiums from the insured (in this case, Prince) and send Acordia a check for the amount received less its commission. Blythe's name and address appeared on the face of the policy issued to Prince in the space designated "Agent Name and Address." Blythe is referred to as the "agent" on five other pages in the policy. Blythe's address is the only address contained in the policy.
In May 2000, First Merit Bank, N.A., sued Prince and its employees, Michelle Brown and Patrick Boatright, alleging that the defendants misrepresented certain information to the bank to obtain financing for a mobile home purchased by Overton for Waldrop. Merit Bank claimed breach of the universal lender-dealer agreement it had entered into with Prince and sought damages in the amount of the unpaid loan plus interest, costs, and attorney fees. Prince gave Blythe notice of the action; Blythe, in turn, gave notice to Crum Forster Insurance Company on June 14, 2000, by facsimile. North River is a subsidiary of Crum Forster. According to the testimony of Phillip Blythe, the owner of Blythe, Acordia had instructed Blythe to send all notices of claims involving insureds directly to the insurance company involved. Phillip Blythe testified that in accordance with those instructions, Blythe, acting on behalf of its insured, would forward claims directly to the insurance company. Blythe used its own forms for such notices.
On June 15, 2000, Crum Forster acknowledged receipt of the notice of Merit Bank's action against Prince, denied Prince's request for coverage, and refused to provide it with a defense. Blythe was sent a copy of the denial letter. Overton and Waldrop concede that the policy did not provide coverage for the claims Merit Bank asserted against Prince.
On December 11, 2000, Prince and its employees filed a third-party complaint against Overton and Waldrop, claiming that Overton and Waldrop made false representations to them, which they, in turn, submitted to Merit Bank. On July 6, 2001, Overton and Waldrop filed a counterclaim against Prince and its employees, including claims of breach of contract and fraud. Overton and Waldrop state that Prince and its employees failed to appear and defend the counterclaim, and on August 27, 2001, they filed a motion for a default judgment against Prince and its employees. On August 28, 2001, counsel for Overton and Waldrop received documents as a result of a third-party subpoena that indicated that North River had issued the insurance policy to Prince and that Blythe was the agent. That same day, counsel faxed a copy of the motion for a default judgment and mailed a copy of the motion and counterclaim to Blythe. On October 1, 2001, counsel sent another letter to Blythe, enclosing copies of the applications for entry of default and supporting affidavits.
On December 3, 2001, Prince and Brown each filed Chapter 7 bankruptcy petitions. Overton and Waldrop filed motions with the bankruptcy court seeking relief from the automatic stay in both cases. In separate agreements filed in the two bankruptcy cases, Overton and Waldrop entered into agreements with Prince and Brown providing that the motions for relief from the automatic stay could be granted for the sole purpose of allowing Overton and Waldrop to pursue their claims against Prince and Brown in the state court. The *Page 426 
agreements further provided that Overton and Waldrop could "seek to enforce any judgment obtained against the debtor solely against any available proceeds of insurance, but the automatic stay shall continue in effect as to any attempts to collect any monies from the debtor or assets of the debtor or to otherwise enforce any judgment against the debtor." On February 26, 2002, the bankruptcy court approved the agreements.
On April 25, 2002, default judgments were entered in favor of Overton and Waldrop and against Prince and Brown, in the total amount of $3 million. Overton was awarded $250,000 in compensatory damages and $250,000 in punitive damages against Brown and the same amount against Prince. Waldrop was awarded $500,000 in compensatory damages and $500,000 in punitive damages against Brown and the same amount against Prince. No default judgment was entered against Boatright.[1]
On June 6, 2002, Overton and Waldrop filed a garnishment proceeding against North River, which responded: "No coverage. No contractual liability to [Prince and Brown]." They filed a motion contesting North River's answer to the garnishment process, and the trial court established the issue before it as: "Whether or not North River Insurance Co. owes coverage to Prince Family Housing under the allegations in this case as proven." On October 28, 2003, North River filed a Rule 60(b), Ala. R. Civ. P., motion to set aside the default judgments entered against its insureds.[2]
Overton and Waldrop state that, over the next three years, they and North River engaged in discovery regarding the issue to be tried in the garnishment proceedings and that on March 6, 2006, the trial court entered an order purporting to set aside the default judgments, stating:
 "This matter is before the Court on the motion of the garnishee, The North River Insurance Company ('North River'), for relief from default judgments under Ala. R. Civ. P. 60(b). After considering the evidence, briefs, and oral argument of the parties, the Court concludes that North River is entitled to relief from judgments under Rule 60(b)(4), because North River did not receive notice before, or promptly after, the default judgments were entered. The judgments are void for that reason. Moreover, even if the judgments were not void, the Court concludes that North River would be entitled to relief under Rule 60(b)(6), for the reasons advanced by North River in its motion and supporting briefs. The Court notes that, in reaching this conclusion, the Court applied *Page 427 
the factors specified in Kirtland v. Ft. Morgan Authority Sewer Service, Inc., 524 So.2d 600
(Ala. 1988), and determined that all of those factors support an order granting relief from the default judgments entered in this case. North River's motion for relief from the judgments is due to be, and the same hereby is, Granted."
Because North River was not a party to the action resulting in the default judgments in favor of Overton and Waldrop and against Prince and Brown, on May 23, 2007, we issued the following show-cause order to North River:
 "Respondent/Appellee, North River Insurance Company, is hereby ordered to show cause, in writing, within 21 days of the date of this order, why this cause should not be dismissed for lack of standing. Upon motion of North River Insurance Company as garnishee, the trial court entered an order setting aside default judgments in favor of Allen Overton and Cindy Waldrop and against Prince Family Housing, Inc., and Michelle Brown. As the garnishee, North River Insurance Company answered that it had no contractual duty or obligation to its insured, Prince Family Housing, Inc. It appears to this Court that, pursuant to Rule 60(b), Ala. R. Civ. P., North River Insurance Company is without standing to attack the underlying judgment, to which it appears North River Insurance Company is a stranger."
In response, North River asserts that it had standing to seek relief from the judgments under the principles applied by this Court in Ex parte Employers Mutual Casualty Co.,845 So.2d 773 (Ala. 2002). It also cites decisions from other jurisdictions to support a finding that North River has standing to seek relief from the judgments. In the alternative, North River argues that a nonparty may have standing to seek relief from a judgment under extraordinary circumstances based on Grace v. Bank Leumi Trust Co. of New York,443 F.3d 180 (2d Cir. 2006).
Overton and Waldrop filed a motion for leave to respond to the show-cause order, and we granted their motion. Overton and Waldrop argue that Employers Mutual does not support the proposition that North River had standing to file a Rule 60(b) motion in the underlying action, to which it was not a party. They also argue that North River had the opportunity to defend its insureds (Prince and Brown) and that it had notice of the claims against the insureds before the garnishments were filed.
Although neither party in its briefs to this Court raises the issue whether North River had standing to file a Rule 60(b), Ala. R. Civ. P., motion to seek relief from judgments entered in an action to which it was not a party, standing is a component of subject-matter jurisdiction and can be raised at any time. State v. Property at 2018 Rainbow Drive,740 So.2d 1025 (Ala. 1999).
Rule 60(b) provides, in pertinent part:
 "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether here-to-fore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior *Page 428 
judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
(Emphasis added.) North River was not a party to the action resulting in the judgments in favor of Overton and Waldrop and against Prince and Brown. North River was also not a "party's legal representative" as that term is used in Rule 60(b). A legal representative under Rule 60(b) is "one who by operation of law is tantamount to a party in relationship to the matter involved in the principal action." Western Steel ErectionCo. v. United States, 424 F.2d 737, 739 (10th Cir. 1970) (interpreting Rule 60(b), Fed.R.Civ.P.). "A `legal representative' is one "who stands in the place and stead of another, such as an heir at law." Mobay Chem. Co. v. HudsonFoam Plastics Corp., 277 F.Supp. 413, 416 (D.C.N.Y. 1967) (citing Ingerton v. First Nat'l Bank Trust Co. ofTulsa, 291 F.2d 662, 664 (10th Cir. 1961)). A trustee in bankruptcy is a party's legal representative for the purposes of Rule 60(b). See Heyman v. M.L. Marketing Co.,116 F.3d 91 (4th Cir. 1997) (trustee assumed the role of debtor-corporation's management and became the legal representative of the bankruptcy estate for purposes of Rule 60(b), giving the trustee standing to file a Rule 60(b) motion).
North River cites Ex parte Employers Mutual Casualty Co.,supra, in support of its position. In EmployersMutual, the insurer denied coverage and declined to provide its insured a defense. The insured eventually consented to a judgment against it and in favor of the plaintiff. In a separate action, the insured sued its insurer and the plaintiff in the underlying action. The plaintiff filed a cross-claim against the insurer, and the insurer filed a counterclaim against its insured and a cross-claim against the plaintiff. The insurer sought a declaratory judgment on the issue whether there was collusion to defraud involved in the consent judgment between the insured and the plaintiff. The trial court struck the defense on the ground that the insurer could not challenge the judgment because it had declined to defend the insured and had failed to intervene as a party in the underlying action or to challenge or appeal the consent judgment. The insured filed a petition for a writ of mandamus, and this Court granted the petition, holding that the insurer, in the separateaction, was not barred from asserting the defense to collusion to defraud. In response to the trial court's conclusion that the insurer could not attack the consent judgment because it had not intervened in the underlyingaction to challenge it, this Court stated: "Indeed, intervention would have been required to bring a challenge under the rule mentioned by the trial court — Rule 60(b), Ala. R. Civ. P. — because that rule applies only to parties or their legal representatives." 845 So.2d at 776.
North River cites Employers Mutual in support of its contention that "it was unnecessary for North River to intervene, because it became a party to the action against the insureds when the garnishments were issued in that action." (Response to show cause order, p. 5.) However, EmployersMutual actually supports the position that North River did not have standing to file a Rule 60(b) motion seeking relief from the default judgments entered in favor of Waldrop and Overton and against Prince and Brown. North River did not intervene in the underlying action, and as the garnishee, it was not a party or a party's legal representative for the purposes of seeking relief from the default judgments under Rule 60(b). *Page 429 
 "Plaintiffs cite Rule 60(b)[, Fed.R.Civ.P.,] as granting to this court the authority to modify the prior consent decree in order to `relieve a party or his legal representative from a final judgment, order, or proceeding . . . [for] any . . . reason justifying relief from the operation of the judgment.' Plaintiffs would have us apply this rule even to those plaintiffs in the instant action who were not parties in the original suit. We do not read the rule so broadly. The rule specifically refers to `a party or his legal representative.' We take this to mean that only one who was a party to the original action which gave rise to the final judgment or order now being attacked may be heard to complain of the unfair or incorrect ramifications of that judgment. This is especially true in cases where, as here, even after individuals are notified of the pendency of an action, the results of which are potentially adverse to their interests, those individuals voluntarily opt not to intervene in the proceeding in order to guarantee that their interests are adequately represented. Should this court determine otherwise we would be faced with a system, haunted by the spectre of uncertainty and instability of judgments since final determinations might be attacked by anyone at any time should the law be changed subsequent to the original decision. We decline to place the structure of the decision making process on such a shaky foundation, thereby ignoring our overriding interest in the finality and repose of judgments."
Smith v. Missouri Pacific R.R. (No. 74-565, July 31, 1978) (W.D.La. 1978) (not reported in F.Supp.).
North River cites State Farm Mutual Insurance Co. v.Senn, 277 Ala. 508, 172 So.2d 533 (1965), for the proposition that an insurance company, even though a stranger to the judgment against its insured, could move to set aside the judgment. In Senn, an insurance company appealed from the trial court's order refusing to expunge a judgment against its alleged insured. This Court held that the judgment was void on its face because the trial court, which had ex mero motu granted a motion for a new trial after the time for taking an appeal had run, lacked jurisdiction. Although the insurance company was a stranger to the underlying judgment, this Court stated that because the judgment was void on its face, it was a nullity, and a court, on motion of a stranger, "`may purge the records of the court of such void and impertinent matter.'"277 Ala. at 511, 172 So.2d at 535 (quoting Aiello v.Aiello, 272 Ala. 505, 508, 133 So.2d 18, 20 (1961)). We note that the plaintiff in the underlying action inSenn had argued that the insurance company was estopped from attempting to expunge the record because it had failed to provide a defense for its insured on the basis that he was not an insured of the company. Without deciding whether estoppel was appropriate, this Court stated that the record did not indicate whether the insurance company had failed to provide a defense and that it would not consider statements in the briefs not supported by the record. Senn is distinguishable from the present case because it was released before the adoption of the Alabama Rules of Civil Procedure.[3] *Page 430 
In Kem Manufacturing Corp. v. Wilder, 817 F.2d 1517
(11th Cir. 1987), a nonparty appealed from the district court's denial of his Rule 60(b), Fed.R.Civ.P., motion to set aside the judgment in an underlying action. The nonparty alleged that the parties to the underlying action committed fraud both against him and on the district court and that he must be granted standing under Rule 60(b) to argue these contentions to the district court. The United States Court of Appeals for the Eleventh Circuit rejected his assertion and affirmed the order of the district court denying the nonparty's Rule 60(b) motion.
Kem Manufacturing had sued the defendants under various legal theories, including fraud for allegedly converting Kern's business opportunities to their own benefit. The nonparty was noticed for deposition, and his deposition was used at trial. After trial, the federal district court, with the parties' agreement, granted a partial mistrial and scheduled another trial limited to the remaining issues. A confession of judgment was entered in which the defendants acknowledged a breach of fiduciary duty and also that they owed Kem actual damages plus interest. In his Rule 60(b) motion, the nonparty alleged that Kem and the defendants had inflated the judgment and that Kem and the defendants had agreed that Kem would seek to collect the judgment against the nonparty, who was being sued in the state court by Kem as the indemnitor of the defendants. The federal appeals court held that the nonparty did not have any legal relationship with any party that makes him in any way a party's legal representative under Rule 60(b):
 "[T]he term legal representative was intended to reach only those individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment. See, e.g., Dunlop [v. Pan American World Airways, Inc.], 672 F.2d [1044] at 1052 [(2d Cir. 1982)]; Western Steel Erection Co. [v. United States], 424 F.2d [737] at 739 [(10th Cir. 1970)]; Mobay [Chem. Co. v. Hudson Foam Plastics Corp.], 277 F.Supp. [413] at 416
[(S.D.N.Y. 1967)]. The final judgment in this action does not directly affect any property or other legal right of [the nonparty]. Nor does [the nonparty] have any legal relationship with any party that makes him in any way a party's legal representative. Both parties in this litigation have their own counsel or *Page 431 
are representing themselves, and thus [the nonparty] cannot in any pragmatic sense be considered the representative of any party to this litigation. Indeed, his position is at odds with both parties to this litigation."
817 F.2d at 1520.
The nonparty in Kem also argued that he had privity with the defendants as the defendants' purported indemnitor so as to have standing to file a Rule 60(b) motion. The court stated:
 "[The nonparty]'s argument must fail. In the first place, the law is unclear regarding whether a party's indemnitor is in privity with a party to the litigation for the purposes of standing under Rule 60(b), and this alone represents a serious obstacle to [the nonparty]'s argument. It is not clear that the privity exception does any more than restate in different language the rule that persons tantamount to a party may be allowed standing. But even assuming, without deciding, that such a relationship would be sufficient to invoke the privity exception, [the nonparty] himself denies that he is [the defendants'] indemnitor. [The nonparty] cannot be considered an indemnitor. This is especially true where [the nonparty] himself is presumably arguing in another court that there is no indemnity agreement, and where [the nonparty] was quite clearly well apprised of this action during the course of its litigation. The final judgment here did not bind [the nonparty] in any way, and it most particularly did not address, much less decide, the question of whether he is [the defendants'] indemnitor. Moreover, those questions are apparently already before an alternative forum well equipped to handle them; [the non-party] still has available an effective opportunity to raise any of the legal claims he asked to argue in the Rule 60(b) motion. Thus, under the circumstances of this case [the nonparty] is not in privity with [the defendants] as that term is used in defining standing under Rule 60(b) and therefore has no standing to bring a Rule 60(b) motion."
817 F.2d at 1520. We agree with the Eleventh Circuit Court of Appeals that an exception based on privity for the purposes of standing under Rule 60(b) appears to do nothing "more than restate in different language the rule that persons tantamount to a party may be allowed standing." 817 F.2d at 1520.
In the alternative, North River argues that it is entitled to standing as a nonparty because of the extraordinary circumstances of this case. It cites Grace v. Bank LeumiTrust Co., supra, in support of its position.Grace relied upon Dunlop v. Pan American WorldAirways, Inc., 672 F.2d 1044 (2d Cir. 1982). InDunlop, the United States Court of Appeals for the Second Circuit stated that standing is generally not available for nonparties who seek relief from a judgment under Rule60(b), Fed.R.Civ.P. There is an exception to the general rule when the facts demonstrate that the nonparty movant is "sufficiently connected and identified" with the action that resulted in the judgment. 672 F.2d at 1052.
In Dunlop, airline employees filed separate complaints in state court alleging individual instances of age discrimination in their employment terminations. Subsequently, the Secretary of Labor brought an age-discrimination action against an airline on behalf of other employees under federal employment laws. The individual employees were unable to pursue their state-law claims while the Secretary and the airline engaged in extensive discovery. The federal action was eventually settled. The individual employees, who were not parties to the federal litigation, moved pursuant to Rule 60(b)(6) to amend the stipulation *Page 432 
of settlement by making it clear that it did not as a matter of federal law or agreement bar their pursuit of their individual state-law age-discrimination claims against the airline. The trial court denied their motion on the grounds that the individual employees lacked standing to invoke Rule 60. The Court of Appeals held that although Rule 60(b)(6) would not ordinarily be available to nonparties to modify final judgments, on the facts of that case the individual employees were sufficiently connected with the Secretary's action to entitle them to standing. The Court of Appeals specifically stated that its holding was "extremely narrow" in that the employees' motion sought "only to modify a federal judgment solely to protect state claims in accordance with federal law" and was not an attempt to intervene in an ongoing action by the Secretary to assert the employees individual federal rights.672 F.2d at 1053.
Grace v. Bank Leumi Trust Co., supra, also involved a very narrow set of circumstances allowing a nonparty standing to bring a Rule 60(b) motion seeking relief from a judgment.Grace involved complex litigation concerning taking a public corporation private in a freeze-out merger. In 1985, the former minority shareholders of the corporation sued the corporation and the majority shareholder, among others, alleging violations of federal securities law and state law in connection with the freeze-out merger. In 1996, the former minority shareholders sought to add new defendants, citing numerous mortgage and loan transactions that had taken place subsequent to and in some cases years after the events alleged in the original complaint. The trial court denied the motion to amend the complaint because the original complaint did not place the new defendants on notice of any continuing course of conduct and the proposed amendment did not seek to state a new legal theory or amplify facts alleged in the original complaint; rather, it set forth a new set of operational facts allegedly violative of a different set of laws. Grace v.Rosenstock, 169 F.R.D. 473 (E.D.N.Y. 1996). Because the former minority shareholders had entered into a settlement with the corporation, the corporation was not represented by counsel, and the corporation was by then judgment-proof, the former minority shareholders, as judgment creditors, attempted to use the judgment as a predicate for a fraudulent-conveyance action against the defendants they had attempted to add as new defendants to their original action. The Court of Appeals held that the defendants were "sufficiently connected and identified with" the settlement so as to have standing to file a Rule 60(b) motion, where the former minority shareholders' own admissions and the evidence indicated that they had obtained the judgment to pursue collection of that judgment by recapturing the fraudulent conveyances from the defendants. The court in Grace v. Bank Leumi Trust Co. made it clear that its decision was limited to the facts of that case, stating: "We thus carve out an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor party's legal representative to a judgment, lack standing under Rule 60(b)." 443 F.3d at 189.
We are not persuaded by North River's argument that the particular facts in the present case support its broad interpretation of Rule 60(b) as it pertains to standing as a nonparty. Grace held that
 "where plaintiffs enter into a settlement agreement with a judgment-proof, pro se defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the *Page 433 
third party, the party is `strongly affected' by the judgment and entitled to standing to bring a Rule 60(b) motion."
443 F.3d at 188. Emphasizing that its holding was limited to the particular facts presented by that case, the court inGrace stated:
 "In this case, however, there is a strong possibility that the predicate judgment that forms the basis of this fraudulent conveyance action is the result of a settlement process devoid of due process protections and marred by serious procedural shortcomings. There is the appearance that plaintiffs and defendants entered settlement negotiations with the mutual intent of laying the burden of compensating plaintiffs squarely on nonparty movants. Should the fraudulent conveyance claims be heard on the merits, the trial court could choose not to look behind the judgment for any improprieties. We thus carve out an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b)."
443 F.3d at 189.
The present case does not involve a fraudulent conveyance; instead, it involves a proceeding seeking to garnish the proceeds of an insurance policy. In the garnishment proceeding, North River is the garnishee, and the money sought by a judgment creditor in a garnishment action must be due to the judgment debtor absolutely and without contingency.Escambia Chem. Corp. v. United Ins. Co. of America,396 So.2d 66 (Ala. 1981). North River's answer in the garnishment proceeding is that it owed no coverage and had no contractual liability to Prince and Brown. Overton and Waldrop have the burden of establishing that insurance coverage is an asset of Prince and Brown, as the judgment debtors. § 6-6-458, Ala. Code 1975; see also Sun Ins. Co. v.Doster-Northington Drug Co., 164 Ala. 572, 51 So. 414
(1909) (when the garnishee denies under oath any liability to the principal defendant, the burden is on the plaintiff to show the contrary). Additionally, North River can bring a separate action seeking a declaration that there is no insurance coverage for Overton and Waldrop's counter-claim against Prince and Brown. In a declaratory-judgment action, North River would not be collaterally estopped from litigating facts relating to Prince and Brown's liability to Overton and Waldrop because those facts were not "actually litigated" when the default judgments were entered. See Crowder v. Red Mountain MiningCo., 127 Ala. 254, 260, 29 So. 847, 849-50 (1900) ("The judgment in the former suit being by default, no contest was had, and consequently no issues were litigated. This being true, the judgment pleaded could not operate as a bar or as an estoppel in the second suit.").
North River did not have standing to seek relief from the default judgments entered in favor of Overton and Waldrop and against Prince and Brown. Accordingly, the trial court erred in granting North River's Rule 60(b) motion, and we grant Overton and Waldrop's petition in case no. 1050973 and order the trial court to vacate that order. For the reasons stated earlier, we dismiss the appeal in case no. 1051505.
1050973 — PETITION GRANTED; WRIT ISSUED.
1051505 — APPEAL DISMISSED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[1] Boatright is now deceased.
[2] North River sought relief from the default judgments under Rule 60(b)(4) and (b)(6). Specifically, North River argued that the default judgments were void under Rule 60(b)(4) because the default judgments were entered in violation of the automatic bankruptcy stay "because they were based on the showing made by the plaintiffs at a hearing that was held while the stay was in effect." North River also argued that the default judgments were void under Rule 60(b)(4) because providing notice of the action against Prince and Brown to Blythe, as the independent agent, was not notice to North River. Under Rule 60(b)(6), North River argued that the default judgments should be set aside because the damages awards were excessive and because North River did not have an opportunity to appear and defend its interest because of lack of notice. Last, North River argued that the default judgments should be set aside because Overton and Waldrop were to give notice of their third-party complaint against Prince and Brown to "all creditors and other parties in interest" according to the bankruptcy court's order and that failure to notify North River amounted to a "fraud upon the court."
[3] The Committee Comments on 1973 Adoption to Rule 60(b) provide:
 "Subdivision (b). This subdivision specifies certain limited grounds upon which final judgments may be attacked, even after the normal procedures of motion for a new trial and appeal are no longer available. The rule simplifies and amalgamates the procedural devices available at common law and in chancery to make such extraordinary attacks upon the judgment or decree.
 "Present Alabama practice recognizes a number of devices for making an extraordinary attack on a judgment. A judgment at law may be challenged by: a motion for rehearing within four months from rendition of the judgment, Code of Ala., Tit. 7, § 279, Jones, The Four Months Statute, 1 Ala. Law. 237 (1940); a motion to vacate the judgment as void, Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116 (1943); a petition for supersedeas, Thompson v. Lassiter, 86 Ala. 536, 6 So. 33 (1888); a writ of error coram nobis or coram vobis, Smith v. State, 245 Ala. 161, 16 So.2d 315 (1944); an independent proceeding in equity, Choctaw Bank v. Dearmon, 223 Ala. 144, 134 So. 648 (1931); and by collateral attack, A.B.C. Truck Lines v. Kenemer, 247 Ala. 543, 25 So.2d 511 (1946). A decree in equity may be challenged by: a motion to vacate or expunge from the record, Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116 (1943); a bill of review or bill in the nature of a bill of review, Equity Rule 66, Cunningham v. Wood, 224 Ala. 288, 140 So. 351 (1932); and by collateral attack, Merchants Nat. Bank of Mobile v. Morris, 252 Ala. 566, 42 So.2d 240 (1949). This wealth of devices to challenge the judgment or decree is complicated by overlapping grounds for relief, varying time limits, and differences in procedural details." *Page 434