PER CURIAM.
The North River Insurance Company (“North River”), the garnishee in this garnishment action, appeals from a summary judgment in favor of Allen M. Overton and Cindy Waldrop, the garnishors. Overton and Waldrop seek to apply the proceeds of an insurance policy issued by North River to default judgments obtained in a previous action against North River’s insured, Prince Family Housing, Inc. (“Prince”), and Prince’s employee, Michelle Brown. We reverse and remand.

Facts and Procedural History

This is the second time this litigation has come before this Court. In Ex parte Overton, 985 So.2d 423 (Ala.2007), this Court explained the factual background of the case:
“North River issued a commercial general-liability insurance policy to Prince effective for the year ending January 5, 2000. The insurance policy provided that North River would pay those sums the insured became legally obligated to pay as damages because of bodily injury or property damage covered by the insurance policy.
“Blythe Insurance Agency obtained the policy for Prince through an insurance broker, Acordia of Michigan; Denis Porter was the Blythe employee who sold the policy to Prince. Acordia represents insurance companies that offered a specialty line of insurance for mobile-home retail-sales dealers. Acor-dia would send Blythe a statement each month, and Blythe would collect the premiums from the insured (in this case, Prince) and send Acordia a check for the amount received less its commission. Blythe’s name and address appeared on the face of the policy issued to Prince in the space designated ‘Agent Name and Address.’ Blythe is referred to as the *3 ‘agent’ on five other pages in the policy. Blythe’s address is the only address contained in the policy.”
985 So.2d at 424-25.
In 1999, Overton purchased a mobile home for Waldrop from Prince. The sales contract was assigned to First Merit Bank, N.A. (“Merit Bank”), apparently pursuant to a “universal lender-dealer agreement” in which Merit Bank agreed to finance the sale of certain manufactured homes sold by Prince. Ex parte Overton continues:
“In May 2000, [Merit Bank] sued Prince and its employees, Michelle Brown and Patrick Boatwright, alleging that the defendants misrepresented certain information to the bank to obtain financing for a mobile home purchased by Overton for Waldrop. Merit Bank claimed breach of the universal lender-dealer agreement it had entered into with Prince and sought damages in the amount of the unpaid loan plus interest, costs, and attorney fees.' Prince gave Blythe notice of the action; Blythe, in turn, gave notice to Crum & Forster Insurance Company on June 14, 2000, by facsimile. North River is a subsidiary of Crum & Forster. According to the testimony of Phillip Blythe, the owner of Blythe, Acordia had instructed Blythe to send all notices of claims involving insureds directly to the insurance company involved. Phillip Blythe testified that in accordance with those instructions, Blythe,, acting on behalf of its insured, would forward claims directly to the insurance company. Blythe used its own forms for such notices.
“On June 15, 2000, Crum & Forster acknowledged receipt of the notice of Merit Bank’s action against Prince, denied Prince’s request for coverage, and refused to provide it with a defense. Blythe was sent a copy of the denial letter. Overton and Waldrop concede that the policy did not provide coverage for the claims Merit Bank asserted against Prince.
“On December 11, 2000, Prince and its employees filed a third-party complaint against Overton and Waldrop, claiming that Overton and Waldrop made false representations to them, which they, in turn, submitted to Merit Bank. On July 6, 2001, Overton and Waldrop filed a counterclaim against Prince and its employees, including claims of breach of contract and fraud.”
985 So.2d at 425. Overton and Waldrop alleged that Prince had breached the contract for purchase of the mobile home by failing to deliver and install the mobile home properly and because the mobile home had certain, defects. Additionally, Overton and Waldrop sought damages for fraud, suppression, negligent and wanton supervision and training, negligence, wantonness, and the tort of outrage in connection with the facts underlying the breach-of-contract claim and with allegations dealing with actions taken by Prince and its employees to obtain financing for the purchase. The procedural posture of that case is described as follows in Ex .parte Overton:
“Overton and Waldrop state that Prince and its employees failed to appear and defend the counterclaim, and on August 27, 2001, they filed a motion for a default judgment against Prince and its employees. On August 28, 2001, counsel for *4 Overton and Waldrop received documents as a result of a third-party subpoena that indicated that North River had issued the insurance policy to Prince and that Blythe was the agent. That same,day, counsel faxed a copy of.the motion for a default judgment and mailed a copy of the motion and counterclaim to Blythe. On October 1, 2001, counsel sent another letter to Blythe, enclosing copies of the applications for entry of default and supporting affidavits.
“On December 3, 2001, Prince and Brown each filed Chapter 7 bankruptcy petitions. Overton and Waldrop filed motions with the bankruptcy court seeking relief from the automatic stay in both cases. In separate agreements filed in the two bankruptcy cases, Over-ton and Waldrop entered into agreements with Prince and Brown providing that the motions for relief from the automatic stay could be granted for the sole purpose of allowing Overton and Wal-drop to pursue their claims against Prince and Brown in the state court. The agreements further provided that Overton and Waldrop could ‘seek to enforce any judgment obtained against the debtor solely against any available proceeds of insurance, but the automatic stay shall continue in effect as to any attempts to collect any monies from the debtor or assets of the debtor or to otherwise enforce any judgment against the debtor.’ On February 26, 2002, the bankruptcy court approved the agreements.
“On April 25, 2002, default judgments were entered in favor of Overton and Waldrop and against Prince and Brown, •in the total amount of $8 million. Over-ton was awarded $250,000 in compensatory damages and $250,000 in punitive damages against Brown and the same amount against Prince. Waldrop was awarded $500,000 in compensatory damages and $500,000 in punitive damages against Brown and the same amount against Prince....
“On June 6, 2002, Overton and Wal-drop filed a garnishment proceeding against North River, which responded: ‘No coverage. No contractual liability to [Prince and Brown].’ They filed a motion contesting North River’s answer to the garnishment process, and the trial court established the issue before it as: ‘Whether or not North River Insurance Co. owes coverage to Prince Family Housing under the allegations in this case as proven.’ ”
985 So.2d at 425-26.
Following this Court’s decision in Ex parte Overton,[1] the parties filed cross-motions for a summary judgment. On April 16, 2008, the trial court denied North River’s motion and entered a summary judgment in favor of Overton and Waldrop, awarding over $5 million in damages and interest. The trial court’s summary-judgment order included the following, titled “legal conclusions”:
“Insurance policy proceeds are properly subject to garnishment proceedings in Alabama. Commercial general liability insurance protects businesses from third party claims for personal injury or property damage resulting from accidents. An ‘occurrence policy’ confers *5 coverage for injury or damage that occurs during the policy period, regardless of when the claim is presented. A third party who suffers an injury covered by a commercial general liability policy may not have a direct claim under the insurance policy. Rather, the injured party must first obtain a settlement or a judgment against the alleged tortfeasor. When the injured party has obtained a settlement or judgment, the injured party may elect to pursue a garnishment ■proceeding against the defendant’s insurer.
“Generally speaking, the burden rests on the plaintiff-garnishor in a garnishment proceeding to prove every fact essential to show the liability of the garnishee. Ala.Code 1975, § 6-6-458. Thus, the burden rests on the plaintiff to show a garnishable debt, the amount of the garnishee’s indebtedness to defendant and funds or property of the debtor in the garnishee’s hands. The party seeking to establish coverage under an insurance policy has the burden of proving that the claim is within the coverage afforded by the policy. The burden rests on the garnishee to rebut a prima facie case made by the plaintiff and to prove any affirmative defenses. 38 C.J.S. Garnishment § 265 (2007); Williamson v. Home Insurance Co., 778 S.W.2d 281 (Mo.App.1989).
[[Image here]]
“There was potential for coverage under the totality of the circumstances presented by the language of the counterclaims in this case. Each count in Waldrop’s and Overton’s counterclaim included a claim for mental anguish. The policy provided that North River would pay those sums that the insured became legally obligated to pay as damages because of bodily injury to which the insurance applied. Overton and Waldrop have judgments against the Defendants Prince Family Housing and Michelle Brown in an action for damages. The action for damages arose out of an occurrence under circumstances rendering North River liable for any judgment obtained against the insureds, Prince Family Housing and Michelle Brown.
“Notice provisions in an insurance policy are often condition precedents to recovery. Watts v. Preferred Risk Mut. Ins. Co., 423 So.2d 171 (Ala.1982). The purpose of the notice provision in an insurance policy is to afford the insurer an opportunity to control litigation on which its contractual liability hinges. The insurance policy issued by North River to Prince Family Housing required that in the case of a suit brought against any insured, the insured must see to it that North River receive written notice of the suit. The policy provided:
“ ‘2. Duties In The Event of Occurrence, Offense, Claim or Suit
[[Image here]]
“ ‘b. If a claim is made or “suit” is brought against any insured, you must:
‘“(1) Immediately record' the specifics of the claim or “suit” and the date received; and
“ ‘(2) Notify us as soon as practicable.
“ You must see to it that we receive notice of the claim or “suit” as soon as practicable.’
“The Agent Name and Address’ on the face of the policy issued to Prince Family Housing states:
“BLYTHE INSURANCE
P.O. BOX 755
TRUSSVILLE, AL 35173-0755
*6 “Blythe Insurance Agency is referred to as the ‘agent’ on five additional pages in this insurance policy. The Trussville address is the only address contained within the policy. There is no indication to the insured that the agent for purposes of giving notice of a claim is anyone other than Blythe Insurance Agency-
“The Alabama Supreme Court’s opinion on the mandamus made certain findings with respect to notice to North River of the original complaint and the counterclaim filed by Waldrop and Over-ton:
“• Prince Family Housing gave Blythe Insurance Company notice of the original action.
“• Blythe, in turn, gave notice to Crum & Forster Insurance Company on June 14, 2000, by facsimile.
“•North River is a subsidiary of Crum & Forster.
“• On August 28, 2001, counsel for Overton and Waldrop faxed a copy of the motion for a default judgment and mailed a copy of the motion and counterclaim to Blythe.
“•On October 1, 2001, counsel sent another letter to Blythe, enclosing copies of the applications for entry of default and supporting affidavits.
“North River argued that the default judgments entered against its insureds were due to be set aside because of North River’s claim that it did not receive notice of the counterclaim filed by Waldrop and Overton. However, the undisputed evidence was that North River had notice of Waldrop’s and Over-ton’s claims in August 2001.
“All that was required under the policy for purposes of notice was for the insured to ‘see to it’ that North River received written notice of the counterclaim as soon as practicable. The policy did not require that the insured give notice of the suit to North River so long as North River received notice. An injured party as a third-party claimant can give notice of a lawsuit to the tort-feasor’s insurer. Safeway Insurance Co. of Ala. v. Thompson, 688 So.2d 271 (Ala.Civ.App.1996) (plaintiffs attorney sent copy of complaint to insurer; notice provision that insured must give reasonable notice of any lawsuits filed against him was satisfied); Webb v. Zurich Ins. Co., 200 F.3d 759, 761 (11th Cir.2000). Overton and Waldrop gave notice of their counterclaim to North River.
“... In this case, all that was required under the policy for purposes of notice was for the insured to ‘see to it’ that North River received written notice of the counterclaim as soon as practicable. The policy did not require that the insured give notice to North River of the suit so long as North River received notice. Based on the language of North River’s policy, an injured party as a third-party claimant could give notice of a lawsuit to the tortfeasor’s insurer.
“North River contends that notice to Blythe Insurance Agency was not notice to North River because Blythe Insurance Agency failed to pass that notice onto North River. Overton and Wal-drop assert that, regardless of whether the agent communicated such knowledge to the insurer, the agent’s knowledge by law became the insurer’s knowledge. Under Alabama law, notice given to the insurance agent is imputed to the agent’s insurer, and the agent’s knowledge obtained while acting within the scope of its authority is presumed to have been communicated to the insurer. Ala.Code 1975, § 8-2-8; National Security Fire & Cas. Co. v. Coshatt, 690 So.2d 391 (Ala.Civ.App.1996); Alabama Plating Co. v. U.S. Fidelity & Guaranty *7 Co., 690 So.2d 331 (Ala.1996); Union Fire Ins. Co. of Paris France v. Ryals, 25 Ala.App. 300, 145 So. 503 (1932). In the present case, however, there is no question of fact, because the undisputed evidence shows that Blythe Insurance Agency was North River’s agent. Consequently, the notice given to Blythe Insurance Agency in August of 2001 was notice to North River. The fact that Blythe Insurance Agency may have failed to pass the notice on to North River is an issue between Blythe and North River and not before this Court.”
(Emphasis added.)
North River filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., which the trial court denied. North River now appeals.[2]

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a deter mination, we must- review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant, to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Discussion

On appeal, North River argues that the trial court erred in entering a summary judgment for Overton and Wal-drop because, it says, Overton and Wal-drop failed to demonstrate that North River owed coverage under the policy. Specifically, North'River maintains that, among other things, the insured, Prince, breached its contractual duty to provide notice of the pendency of the counterclaim and the resulting default proceedings. According to North River, this failure both prevented North River from defending against the counterclaim and the default judgments and prevents the insured, and, thus, Overton and Waldrop as gar-nishors, from establishing coverage under the policy.[3]
*8 Overton and Waldrop in response argue that Blythe was North River’s agent and that, because their counsel sent a copy of their motion for a default judgment to Blythe, along with a copy of their counterclaim,[4] North River should be deemed to have received notice of the claim against Prince for purposes of invoking coverage under the policy: “counsel for Waldrop and Overton sent copies of the counterclaim and other proceedings to Blythe” and that “was sufficient to provide notice to North River of the counterclaim under the provisions of the policy.” Overton and Waldrop maintain that “[njotice to the company’s agent is notice to the company,” National Sec. Fire & Cas. Co. v. Coshatt, 690 So.2d 391, 393 (Ala.Civ.App.1996), and thus essentially contend that, if Blythe is considered North River’s agent, then North River was deemed to have notice of the counterclaim action when Blythe received the materials forwarded by Overton and Waldrop’s counsel.. See also § 8-2-8, Ala.Code 1975 (“As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other.”). North River, on the other hand, argues that Blythe was not its agent and, thus, that North River received no notice under the terms of the policy either from Prince or through Blythe.
Overton arid Waldrop, as the movants, bore the burden of establishing an agency relationship between Blythe and North River. See also Lincoln Log Home Enters., Inc. v. Autrey, 836 So.2d 804, 806 (Ala.2002) (holding that a party asserting the existence of an agency relationship has the burden of producing sufficient evidence to prove its existence). As noted above, the trial court held that the “undisputed evidence” showed that Blythe was North River’s agent. However, the record contradicts the trial court’s holding.
In support of the argument that Blythe was North River’s agent, Overton and Waldrop cite the testimony of Dianne Dotson, the Crum & Forster claims consultant who initially denied Prince’s request for coverage in the Merit Bank litigation. Dotson was questioned during her deposition about whether Blythe was an agent of North River. At one point she specifically testified that she believed that Blythe had a contract with North River in the past and that notice to Blythe was sufficient to provide notice to North River. She later qualified her testimony, however, and stated that she did not know the terms of any such.agreement or the specifics or scope of any such relationship. Dotson later testified in her deposition:
“[Overton/Waldrop’s counsel]: You’re saying that ... Blythe is not licensed to be an agent for North River in Alabama?
*9 “[Dotson]: I am saying that I don’t know — I have not seen their agency contract. ...
“[Overton/Waldrop’s counsel]: But if Blythe Insurance Agency received it for North River, would they not have received it as North River’s agent?
“[Dotson]: I don’t have their contract with us. And I have not had a chance to review their contract with us.
“[Overton/Waldrop’s counsel]: Do you remember I asked you earlier .that if Blythe had received notice, would that be sufficient notice to North River and you said yes. Do you remember that?
“[Dotson]: I believe you asked me two questions. And I need to clarify that because it was two in a row [and] confusing. I haven’t reviewed their contract.”
Dotson stated that she did not have actual knowledge as to whether Blythe was an agent of North River or Crum & Forster at the time the policy was issued to Prince. Although at one point Dotson appears to testify that Blythe was North River’s agent, she later clarified that she did not know if that was correct. This testimony does not amount to substantial evidence that Blythe was North River’s agent. See Welch v. Houston County Hosp. Bd., 502 So.2d 340, 342 (Ala.1987) (noting that the content of depositions or answers to interrogatories submitted in support of, or in opposition to, a summary-judgment motion must be based on the personal knowledge of the deponent); cf. McGough v. G & A, Inc., 999 So.2d 898, 906 (Ala.Civ.App.2007) (“A nonmovant cannot rely on deposition testimony that is internally inconsistent and contradictory to create a genuine issue of material fact.”).
Other evidence in the record actually demonstrates that Blythe was not North River’s agent. Phillip Blythe, the owner of Blythe, testified in his deposition, when questioned as to whether selling a policy made him an agent of the insurance company issuing the policy, that whether Blythe was an agent “depended] on the company contract.” He further described Blythe as “an independent agency,” which, he said, “represents a number of different insurance companies.” According to Phillip Blythe, he had an “Agency Agreement” with Acordia of Michigan, not with North River. He described his relationship with Acordia as follows:
“[Phillip Blythe]: Acordia of Michigan is, in fact, an insurance agent, also. In the industry, they are known as a broker. They represented an insurance company, and then they came to different agencies throughout the United States with a national program and allowed us to sell one particular line of business through them through the insurance company. We weren’t an employee of Acordia. We had no authority. We just — they were a go-between for an insurance company.
“[Overton/Waldrop’s counsel]: So Acordia is in and of itself somewhat like you, just an agency itself?,.
[[Image here]]
“[Phillip Blythe]: Yes.
“[Overton/Waldrop’s counsel]: You are indicating to me what they would do is they might have agreements with companies themselves, and they just allowed you to sell a certain line of insurance? ■
“[Phillip Blythe]: That’s correct.
[[Image here]]
“[Overton/Waldrop’s • counsel]: If I misstate it, I want you to tell me. In particular, regarding North River Insurance Company, did you ever have an insurance agreement with them of any fashion?
“[Phillip Blythe]: No.
*10 “[Overton/Waldrop’s counsel]: With Crum & Forster, did you have an insurance agreement with them?
“[Phillip Blythe]: No.
“[Overton/Waldrop’s counsel]: Did you ever make any contact regarding setting up insurance agreements with North River?
“[Phillip Blythe]: No.
“[Overton/Waldrop’s counsel]: Or Crum & Forster?
“[Phillip Blythe]: No.”
Phillip Blythe also testified that “[w]hen the actual policy was issued, the policy was sent from the insurance company to Acor-dia, and Acordia in turn sent the policies direct to [Blythe], and [Blythe] delivered that policy to the insured.” He testified that he never received any instructions for handling claims directly from either North River or Crum & Forster. He further indicated that not only did he lack any type of contractual relationship with either North River or Crum & Forster, but he also “had no binding authority” and could merely submit the insurance application, which, he said, the insurance company had the right to accept or reject, and wait for a quote. Assuming that the policy did issue, he indicated that all premiums were remitted directly to Acordia and that the commission received by Blythe was determined by the terms of the Acordia agency agreement. He specifically denied that, at the time of the sale of the policy to Prince, Blythe was acting “as an agent on behalf of North River in the sale of that policy.” He also denied that Blythe was acting as North River’s agent in reporting claims and that North River provided neither instructions nor forms to Blythe related to claims notification. He testified that Blythe was also not an actual registered agent entitled to accept service for any insurance company. Instead, he identified Blythe as the agent of the insured, Prince: “[Overton/Waldrop’s counsel:] So you claim to be Prince ... Family Housing’s agent; is that right?.... [Phillip Blythe:] Yes.”
Phillip Blythe’s testimony suggests that Blythe was acting in the then statutorily defined role of an insurance broker. In Ballard v. Lee, 671 So.2d 1368, 1371-72 (Ala.1995), overruled on other grounds, State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998), this Court addressed the relationship between insurers and insureds and insurance agents and brokers, who serve as middlemen between the two. In that case, the insured, Scottie Ballard, alleged that Travis Ray Carter, an employee of the local insurance broker that obtained Ballard’s commercial insurance, was either the agent of the insurer, which was “[a] ‘certain’ syndicate (the ‘Syndicate’)” of an international brokerage firm, or was a dual agent so that any alleged fraud or misrepresentation by Carter could be attributed to the Syndicate. 671 So.2d at 1369. In rejecting Ballard’s agency claim, this Court applied the following analysis:
“The functions and characteristics of insurance ‘agents’ and ‘brokers,’ respectively, are set forth in Ala.Code 1975, § 27-7-l(a). That section defines those two terms:t[5]
“‘(1) Agent. A natural person, partnership or corporation appointed by an insurer to solicit and negotiate insurance contracts on its behalf, and *11 if authorized to do so by the insurer, to effectuate, issue and countersign such contracts. An agent may not delegate the counter-signature authority by appointing another person as his attorney-in-fact, except, that this provision shall not apply to agents for direct-writing insurers. .
‘“(2) Broker. A natural person, partnership or corporation who, on behalf of the insured, for compensation as an independent contractor, for commission or fee and not being an agent of the insurer, solicits, negotiates or procures insurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself or itself. Brokers cannot bind the insurer and all business produced must be countersigned by a resident agent of the insurer accepting the risk.’
“(Emphasis added.) See, also, J. Appleman, Insurance Law and Practice § 8726, at 338 (1981) (‘A broker is ... one who acts as a middleman between the insured and insurer and ... solicits insurance from the public under no employment from any special company’).
“In this case, it is undisputed that Carter and the Syndicate shared no express contractual relationship. Indeed, Ballard concedes that liability cannot be based on the principle of respondeat superior. Brief of Appellant, at 56. After assuming the responsibility, at Ballard’s request, to locate an insurer, Carter served at all relevant times as a ‘middleman’for the transactions between the Syndicate and Ballard. Moreover, no reasonable construction of the communications transpiring among the parties supports the proposition that Carter had either actual or apparent authority to bind the Syndicate. Thus, we are compelled to conclude that Carter’s role throughout these transactions was that of a broker.
“Ordinarily, ‘an insurance broker represents the insured and is not considered an agent of the insurer.’ Lampkin v. Kelly, 771 S.W.2d 953, 954 (Mo.App.1989). A broker usually acts solely as the insured’s agent and ‘has a license to “hunt” for a suitable policy without having any prior representation contract with any particular insurer.’ M. Pock, Insurance, 45 Mercer L.Rev. 253, 255 n. 15 (1993); see, also, J. Appleman, Insurance Law and Practice § 8727 (1981). Only ‘special conditions or circumstances in a particular case [will] warrant the inference that a broker is the agent of the insurer.’ Lampkin, 771 S.W.2d at 954. These rules are essentially codified in Ala.Code 1975, § 27-7-l(a)(2), which expresses the intent of our legislature with regard to concurrent agency, namely, that in the usual case, a broker will not be regarded as ‘an agent of the insurer.’ Id.
“We are aware that a broker sometimes performs certain functions that benefit the insurer, such as delivering the insurer’s policy to the insured, collecting premiums from the insured, and forwarding the proceeds of the premium to the insurer and, thus, that the broker may, for some purposes, represent the insurer. Hunt v. State, 737 S.W.2d 4 (Tex.App.1987); see, also, American Fire Ins. Co. v. King Lumber & Mfg. Co., 74 Fla. 130, 77 So. 168 (1917), affirmed, 250 U.S. 2, 39 S.Ct. 431, 63 L.Ed. 810 (1919). In § 27-7-1(a)(2), however, these activities are expressly, or by clear implication, ascribed to brokers. Thus, the broad application of this rule in Alabama would render anyone who ‘solicits, negotiates or procures insurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective, insureds,’ *12 § 27-7-l(a)(2) (emphasis added) — by which activities he qualifies as a broker — ipso facto an agent of the insurer. Such a result would contravene § 27-7-1(a)(2) and would be contrary to the policy of this state as declared by the legislature.”
Ballard, 671 So.2d at 1371-72 (some emphasis added).
Nothing in the record tends to show that North River granted Blythe the authority to “ ‘solicit and negotiate insurance contracts on its behalf, and if authorized to do so by [North River], to effectuate, issue and countersign such contracts.’” Ballard, 671 So.2d at 1372 (quoting § 27-1-1(a)(1)). A review of the evidence in light of the legal principles in Ballard—that Blythe had no agency agreement with North River and instead worked as Prince’s agent—compels the conclusion that, at most, Blythe acted as a broker on Prince’s behalf under § 27-7-l(a)(2).
Overton and Waldrop also contend that the policy issued by North River repeatedly refers to Blythe as “agent.” However, the policy does not explicitly state who Blythe represented or that Blythe represented North River. When the evidence is viewed in a light most favorable to North River, as the nonmovant, and given that there is no evidence indicating that Blythe had authority to act as North River’s agent — but ample evidence indicating that Blythe acted on behalf of Prince — the term “agent” in the policy could equally be referencing Blythe as the agent of Prince, not North River. Therefore, we hold that Overton and Waldrop produced no substantial evidence that Blythe was an agent of North River. Thus, the trial court erred in holding that Blythe was North River’s agent.[6]
Further, we conclude that the trial court erred in holding that the “undisputed evidence” demonstrated “that North River had notice of Waldrop’s and Overton’s claims in August 2001.” Overton and Waldrop acknowledged in their motion for a summary judgment that neither Brown nor Prince actually notified North River of the counterclaim filed by Overton and Waldrop: “It is true that neither Prince Family Housing nor Michelle Brown forwarded the counterclaim to North River.” Further, Dotson testified in an affidavit that her letter to Prince denying coverage in the Merit Bank litigation specifically stated that she would reconsider the denial of coverage if she was later presented with additional facts or an amended complaint that might trigger coverage. However, Dotson stated, she had no further contact from anyone regarding the Merit Bank litigation, and North River had no notice of Overton’s and Waldrop’s claims:
“North River had no knowledge or notice of the third-party claims by Allen Overton and Cindy Waldrop. North River did not receive any notice regarding [Prince’s] third-party complaint against Overton and Waldrop. Further, North River did not receive any notice of Overton’s and Waldrop’s counterclaims against [Prince and Brown]. North River did not receive any notice of Overton’s and Waldrop’s applications for default judgments, any of the proceedings relating to the default judgments], or any of the trial court’s orders relating to the default judgments.”
Under § 27-23-2, Ala.Code 1975, Over-ton and Waldrop are subject to North River’s defenses against its insured, including the defense of lack of notice. See *13 Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So.3d 533, 534-35 (Ala.2008). We hold that Overton and Waldrop failed to produce substantial evidence establishing that North River received notice, pursuant to the policy, of Overton and Waldrop’s counterclaim. Thus, Overton and Waldrop did not establish that North River was obligated under the policy to provide coverage for the amounts awarded Overton and Waldrop in the default judgments, and the trial court erred in entering a summary judgment in favor of Overton and Waldrop.[7]

Conclusion

We reverse the summary judgment in favor of Overton and Waldrop and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SHAW, J., concurs specially.'
COBB, C.J., and LYONS, WOODALL, and MURDOCK, JJ., concur in the result.

. North River filed a Rule 60(b), Ala. R. Civ. P., motion to set- aside the default judgments; the trial court granted the motion, concluding that " 'North River did not receive notice before, or promptly after, the default judgments were entered.' " Ex parte Overton, 985 So.2d at 426. Overton and Waldrop petitioned this Court for a writ of mandamus, which we granted, directing the trial court to vacate its ruling. Ex parte Overton, supra. Following our issuance of the writ of mandamus, the trial court reinstated the garnishment action.

. North River notes in its brief to this Court that there remains pending in the Marshall Circuit Court a declaratory-judgment action filed by North River “in accordance with this Court’s statement in Ex parte Overton, supra, that 'North River can bring a separate action seeking a declaration that there is no insurance coverage for Overton and Waldrop’s counterclaims against Prince and Brown.' 985 So.2d at 433.” North River's brief, at p. 3. According to North River, all activity in the declaratory-judgment action has been stayed pending our resolution of the present appeal.

. Overton and Waldrop are proceeding against North River under § 27-23-2, Ala. Code 1975, .which generally provides that under certain circumstances "insurance money provided for” under, an insurance contract between an insurer and a judgment ■ debtor may be applied to satisfy a judgment. The judgment creditor’s ability to reach and apply insurance proceeds is limited:
" ‘The injured party ... can bring an action against the insUrer only after he has recovered a judgment against the insured and only if the insured was covered against the loss or damage at the time the *8 injured party's right of action arose against the insured tort-feasor.'
“Maness v. Alabama Farm Bureau Mut. Casualty Ins. Co., 416 So.2d 979, 981-82 (Ala.1982). The injured party’s ‘vested interest’ is subject to the further qualification that the terms of the policy imposing obligations on the insured are effective as against the injured party.’ George v. Employers’ Liab. Assurance Corp., 219 Ala. 307, 310, 122 So. 175, 177 (1929); see James & Hackworth v. Continental Casualty Co., 522 F.Supp. 785, 787 (N.D.Ala.1980). Thus, defenses to liability available to the insurer in an action brought by the insured would also be available to the insurer in an action brought pursuant to §§ 27-23-1 and -2 by the injured party.”
Haston v. Transamerica Ins. Servs., 662 So.2d 1138, 1139-40 (Ala.1995).

. The record reflects that this documentation was received by Blythe but was misfiled and was never forwarded to either Crum & Forster or North River.

. As noted in Carolina Casualty Insurance Co. v. Miss Deanna’s Child Care-Med Net, L.L.C., 869 So.2d 1169, 1175 n. 4 (Ala.Civ.App.2003): "Although § 27-7-1, Ala.Code 1975, was amended effective January 1, 2002, so as to delete the statutory definitions of 'agent' and 'broker' discussed in Ballard, the incidents on which this action is based occurred before the effective date of that amendment.” Citations to § 27-7-1 in this opinion refer to the Code section as it existed before the 2002 amendment.

. The issue whether the designation "agent” in the policy raises an issue of apparent authority, as discussed in Justice Shaw's special writing, is not argued to this Court and is better left to be decided by the trial court on remand.

. Because we hold that North River did not receive notice of Overton and Waldrop’s counterclaim, we pretermit discussion of the remaining issues raised by North River on appeal.